## IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| THE A.B. WON PAT INTERNATIONAL AIRPORT AUTHORITY,<br><br>Plaintiff,<br><br>vs.<br><br>DFS GUAM L.P.,<br><br>Defendant. | CIVIL CASE NO. CV 0371-16<br>(Consolidated with CV0595-16 and SP0128-16)<br><br><br>**DECISION AND ORDER** |

## INTRODUCTION

This matter came before the Honorable Arthur R. Barcinas on September 27, 2018, upon Plaintiff A.B. Won Pat International Airport Authority, Guam's Motion to Vacate Arbitration Award, and Defendant DFS Guam L.P.'s Application for Order to Confirm Arbitration Award. Attorney Genevieve Rapadas represents Plaintiff A.B. Won Pat International Airport Authority, Guam ("GIAA"). Defendant DFS Guam L.P. ("DFS") was represented by Attorneys William Blair, Patrick Civille, Dean Manglona, and Maurice Suh. For the reasons set forth below, having reviewed the moving papers and having heard oral argument, the Court **DENIES** GIAA's Motion to Vacate Arbitration Award, and **GRANTS** DFS's Application for Order to Confirm Arbitration Award.

## BACKGROUND

The instant matter arises from a contract dispute between DFS Guam L.P. and the A.B. Won Pat International Airport Authority, Guam. As a part of DFS's leasehold at the A.B. Won Pat International Airport, DFS operated duty-free concessions under three different lease

agreements: the Main Concession Agreement (hereinafter "MCA"), the Mama Bear Agreement (hereinafter "MBA"), and the Baby Bear Agreement (hereinafter "BBA"). On November 6, 2002, the Parties entered into the Main Concession Agreement. The MCA required DFS to post a $3,375,000 faithful performance bond. DFS satisfied the faithful performance bond by obtaining a Letter of Credit (LOC) through Citibank, and designated GIAA as the beneficiary. The MCA also held an arbitration clause requiring the parties to resolve all issues through arbitration.

On March 16, 2006, the Parties entered into the Mama Bear Agreement. The MBA required DFS to post a $250,000 surety bond. The security bond contained an "evergreen" provision that required DFS to replenish the surety bond if GIAA ever drew against it. DFS satisfied the surety bond by amending the existing LOC. On January 24, 2007, DFS asked Citibank to increase the existing LOC by $250,000 up to $3,625,000. The third agreement between the parties, the Baby Bear Agreement also required a $250,000 bond. DFS added the BBA's $250,000 bond to the existing LOC. The Citibank LOC which held bonds for all three agreements between DFS and GIAA totaled $3,875,000.

The MBA lease expired on March 17, 2011. However, DFS did not vacate the airport property until July 30, 2013. GIAA, pursuant to Section 11.17 of the MBA, claimed liquidated damages of double rent for the duration of DFS's holdover period, totaling $2,104,582.88. On October 2, 2013, GIAA sent DFS a demand letter for the $2,104,582.88 in holdover rent. On October 17, 2013, GIAA sent a letter to Citibank requesting a drawdown of $2,104,582.88 from the Citibank LOC. On November 13, 2013, GIAA sent a second letter to Citibank requesting a drawdown for the liquidated damages. On December 5, 2013, Citibank satisfied GIAA's drawdown request.

DFS disputed the alleged breach of the MCA and GIAA's drawdown of the Citibank LOC, and filed a government claim pursuant to the Government Claims act on December 4, 2014. DFS alleged that GIAA breached the MCA by drawing down the LOC beyond the $250,000 allocated to the MBA security bond. GIAA denied DFS's government claim on January 26, 2015.

On December 4, 2014, DFS also initiated the MCA's arbitration clause and filed a demand for arbitration for GIAA's alleged breach of the MCA. DFS argued that GIAA improperly drew down $1,854,582.88 from the MCA performance bond. GIAA accepted DFS's demand for arbitration and the parties selected a tribunal of three arbitrators (hereinafter "the Tribunal"). GIAA moved to dismiss the arbitration for lack of jurisdiction on November 12, 2015. The Tribunal denied GIAA's motion to dismiss on December 10, 2015.

After the parties filed all relevant arbitration briefs, the parties submitted to an evidentiary hearing in front of the Tribunal on February 23 and 24, 2016. The evidentiary hearing was held at the Hyatt Regency Guam Hotel in Tumon, Guam. On May 6, 2016, the Tribunal issued its final and binding decision (hereinafter "the Final Award"), finding in favor of DFS. The Tribunal granted DFS its requested relief of $1,854,582.88 for the improperly drawn funds from the LOC, $388,223.20 in attorney's fees, $84,770.00 in costs, and pre/post-award interest.

GIAA filed the complaint in the underlying case, CV 0371-16, on May 9, 2016. DFS filed the complaint for consolidated case, CV 0595-16, on July 25, 2016. DFS filed its Application for Order to Confirm Arbitration Award ("Application to Confirm Award") as a part of consolidated case, SP 0128-16, on July 25, 2016. The Court consolidated cases CV 0371-16, CV 0595-16, and SP 0128-16, with a consolidation order on August 16, 2016.

GIAA filed its Opposition to DFS's Application to Confirm Award on August 22, 2016. DFS filed its Reply to GIAA's Opposition on September 6, 2016.

GIAA filed its own Motion to Vacate Arbitration Award on July 11, 2016. DFS filed its Opposition to GIAA's Motion to Vacate Arbitration Award on August 8, 2016. GIAA filed its Reply to DFS's Opposition on August 22, 2016.

Due to ongoing litigation in another case between the two parties, the Court and the parties agreed to hold this matter in abeyance until the resolution of that related case. After a judgment issued on February 5, 2018, ending the related case, the parties and the Court resumed the instant case. The Court scheduled a hearing on DFS's Application to Confirm Award and GIAA's Motion to Vacate Arbitration Award, and on September 27, 2018, the Court heard

arguments from GIAA and DFS on both matters. At the conclusion of the hearing, the Court took this matter under advisement.

**DISCUSSION**

DFS and GIAA have made filings seeking diametrically opposite relief from the other. One seeks to have the Court confirm the Tribunal's Final Award, while the other seeks to have the Court vacate the Tribunal's Final Award. Because the relief sought are two sides of the same coin, the Court needs only to analyze the question of whether the Tribunal's Final Award is a valid one for the Court to confirm, or an invalid one for the Court to vacate. To do so, the Court will first delve into the applicable law surrounding arbitrations held on Guam. Afterwards, the Court will analyze of the disputed issues concerning the Final Award and conclude whether to confirm or vacate the Final Award.

## I.    Standard of Review for Judicial Review of Arbitration Awards

Arbitration awards are binding, except under certain limited circumstances. See Sumitomo Construction Co., Ltd. v. Zhong Ye, Inc. ("Sumitomo I"),1997 Guam 8 ¶ 11. There is a strong policy on Guam favoring arbitration, and in light of this policy, "[j]udicial review of an arbitration award is extraordinarily narrow." Govt. of Guam v. Pacificare Health Ins. Co. of Micronesia, Inc., 2004 Guam 17 ¶ 16 (quoting Brook v. Peak Intern., Ltd., 294 F.3d 668, 672 (5th Cir. 2002); see Roubik v. Merill Lynch, Pierce, Fenner & Smith, 692 N.E.2d 1167, 1171 (Ill.1998) ("It is well established that judicial review of an arbitral award is intended to be more limited than appellate review of a trial court judgment."). "[C]ourts may not review the merits of the controversy, the validity of the arbitrator's reasoning, or the correctness of the arbitration award." Guam YTK Corp. v. Port Auth. of Guam, 2014 Guam 7 ¶ 58.  The Guam Supreme Court stated that "[w]hen reviewing the decision of a lower court confirming an arbitration award, questions of law are reviewed *de novo* while questions of fact are reviewed under the clearly erroneous standard." Sumitomo I, 1997 Guam ¶ 9 (citing First Option of Chicago, Inc., v. Kaplan, 514 U.S. 938 (1995)); see also Pacificare, 2004 Guam 17 ¶ 16. The Sumitomo I court further held that "[t]hese same standards apply to the trial court's review of the arbitrator's award." Sumitomo I, 1997 Guam ¶ 9 (citing Carpenters Pension Trust v. Underground

Construction Co., 31 F.3d 776 (9th Cir.1994)). Having received instruction on how to examine an arbitrator's award, the Court analyzes the parties' requests under this standard.

## II.    Arbitration Law Applicable in this Matter

On May 6, 2004, the Guam Legislature enacted the Guam International Arbitration Chapter ("GIAC") under Guam Public Law 27:81:3,4. Asia Pacific Hotel Guam, Inc. v. Dongbu Ins. Co., Ltd. ("Asia Pacific I"), 2011 Guam 18 ¶ 9. The Guam Legislature codified the GIAC into the Guam Code Annotated as Title 7 Guam Code Annotated Chapter 42A.intending for the GIAC to apply to all "international commercial arbitration and domestic arbitration, subject to any agreement in force between Guam and any other state or states." 7 GCA § 42A101(d). The GIAC considers an arbitration to be international if:

> (1) the parties to an arbitration agreement have, at the time of the conclusion of that agreement, their places of business in different States; or
> (2) one of the following places is situated outside the State in which the parties have their places of business:
> (A) the place of arbitration if determined in, or pursuant to, the arbitration agreement;
> (B) any place where a substantial part of the obligations of the commercial relationship is to be performed or the place with which the subject matter of the dispute is most closely connected; or
> (C) the parties have expressly agreed that the subject matter of the arbitration agreement relates to more than one State.

7 GCA § 42A101(f). An arbitration is considered to be domestic if:

> (1) The arbitration is not an international commercial arbitration as defined in paragraph (f) above; and
> (2) the place of the arbitration is Guam.

7 GCA § 42A101(g). DFS is a limited partnership with its place of business on Guam. GIAA is an autonomous Government of Guam ("GovGuam") agency located on Guam. The arbitration took place on Guam. Because the neither parties are international parties, and because the arbitration happened on Guam, the Court finds that the GIAC applies to the domestic arbitration matter between DFS and GIAA.

The Court also notes two other legal authorities for arbitrations on Guam. The Asia Pacific I court acknowledged that the New York Convention on the Recognition and

Enforcement of Foreign Arbitral Awards[1] ("NY Convention"), and the Federal Arbitration Act ("FAA") could apply to arbitration proceedings on Guam. Asia Pacific I, 2011 Guam 18 ¶ 18. The Court examines whether the FAA or the NY Convention preempts the GIAC.

The FAA applies to arbitration agreements in contracts involving commerce in states and territories. 9 U.S.C. § 1 ("['C]ommerce, as herein defined, means commerce among the several states ... or in any territory of the United States ... or between any such Territory and another, or between any such Territory and any State or foreign nation...."). The Guam Supreme Court previously found that the FAA could potentially apply on Guam because the territory engaged in interstate commerce within the context of the Commerce Clause. See Pacificare, 2004 Guam 17 ¶ 11. The Guam Supreme Court went into a more in-depth analysis of the FAA's applicability to arbitrations on Guam. In Rong Chang Company, Ltd., Inc. v. M2P, Inc., 2012 Guam 1, the Guam Supreme Court found that the FAA applied to cases involving interstate commerce. Id. at ¶ 36. Both parties have their principal places of business on Guam. Further, while individual parties may participate in interstate commerce, the contracts between the two concern only commerce within Guam. Therefore, the Court finds that the FAA does not apply to the current matter.

The NY Convention is a treaty signed by the United Nations in 1958. See Industrial Risk Insurers v. M.A.N. Gutehoffnungshutte GmbH, 141 F.3d 1434, 1440 (11th Cir. 1998). The United States signed onto the NY Convention in 1970, and codified the treaty in Chapter 2 of the FAA that same year. Id. The purpose of the NY Convention is to "encourage the recognition and enforcement of international arbitral awards," Bergesen v. Joseph Muller Corp., 710 F.2d 928, 932 (2d Cir.1983), to "relieve congestion in the courts and to provide parties with an alternative method for dispute resolution that [is] speedier and less costly than litigation." Ultracashmere House, Ltd. v. Meyer, 664 F.2d 1176, 1179 (11th Cir.1981). The NY Convention applies to "the ... enforcement of ... awards made in the territory of a State other

---

[1] The NY Convention is currently codified in Chapter 2 of the Federal Arbitration Act. For the purposes of identification, the Court refers to Chapter 1 of the Federal Arbitration Act when referencing the FAA, and refers to Chapter 2 of the Federal Arbitration Act when referencing the NY Convention.

than the State where the ... enforcement of such awards are sought, and arising out of differences between persons.... It shall also apply to arbitral awards *not considered as domestic* awards in the State where their ... enforcement are sought." Asia Pacific I, 2011 Guam 18 ¶ 14 (quoting N.Y. Convention art. I, ¶ 1 (emphasis added)). Although the Asia Pacific I court's analysis was not as simplistic as finding the distinction between domestic and international awards as the deciding factor on the applicability of the NY Convention, the application of Asia Pacific I is simple in this case. The instant arbitration took place on Guam between two purely domestic parties. There is no international component of the instant arbitration to invoke the NY Convention. Therefore, the Court finds that the NY Convention does not apply to this matter. Accordingly, the Court proceeds using the GIAC as the source of authority for the instant arbitration.

## III.    Procedure for Confirming a Final Arbitration Award

The GIAC sets out a very narrow role for the Court to play when examining an arbitration award. Title 7 GCA Section 42A702 states in relevant part:

> If the parties, in their agreement, have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon **the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in Sections 42A606 and 42A701.** If no court is specified in the agreement of the parties, then such application may be made to the court.

7 GCA § 42A702 (emphasis added). The Court must review two items before confirming an award: (1) whether the Court has jurisdiction over the arbitration award; and (2) whether the award was vacated, modified or corrected pursuant to 7 GCA §§ 42A606 and 42A701. The Court first examines jurisdiction. The dispute resolution clause of the MCA, Section 13.10, states that "judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof." Decl. of Jay D. Trickett in Support of GIAA's Motion to Vacate Arbitration Award ("Trickett Decl.") Ex. 3 (Joint List of Agreed Docs. for the Final Arbitration Hr'g on the Merits ("Joint Docs") Ex. A at 42-43) (Jul. 11, 2016). This arbitration took place on Guam between two parties domiciled on Guam. Guam law allows the Court to review

arbitration awards. Therefore, the Court has jurisdiction over this award. With jurisdiction settled, the Court now must turn to GIAA's pending request to vacate the Final Award. If after examining GIAA's request, the Court finds cause to vacate the Final Award, the Court must deny DFS's application to confirm the award. If, however, the Court finds no cause, the Court must, pursuant to 7 GCA § 42A702, confirm the Final Award.

## IV.    Procedure for Vacating an Arbitration Award

"Courts are loath to interfere with arbitral decisions, because to do so would diminish the efficacy of arbitration as an efficient, economical, and informal form of alternative dispute resolution." Asia Pacific Hotel Guam, Inc. v. Dongbu Ins. Co., Ltd. ("Asia Pacific II"), 2015 Guam 3 ¶ 15. To vacate an award, "[appellants] must clear a high hurdle. It is not enough for [appellants] to show that the panel committed an error—or even a serious error." Id. (quoting Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662, 671 (2010)) (internal quotation marks omitted). The GIAC shows appellants exactly what limited circumstances in which a court can vacate an arbitration award. Title 7 GCA Section 42A701 states in relevant part:

> (b) In any of the following cases the court may make an order vacating the award upon the application of any party to the arbitration:
> (1) where the award was procured by corruption, fraud, or undue means;
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence that is pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

7 GCA § 42A701(b). Outside these four limited causes, the Court has no ability to vacate an arbitration award.

GIAA argues that the sufficient cause exists for the Court to vacate the Tribunal's Final Award. GIAA asks the Court to vacate the Final Award because the Tribunal acted without jurisdiction and in excess of their powers pursuant to 7 GCA § 42A701(b)(4), by making legal determinations on claims brought under the MBA, and by awarding pre and post-award interest

to DFS. GIAA's arguments regarding jurisdiction and interest are questions of law. Therefore, the Court examines GIAA's legal arguments *de novo*.

## V.    GIAA Breached the Main Concession Agreement

The crux of GIAA's first argument rests in the question of whether GIAA withdrew funds from the Citibank LOC strictly under the terms of the MBA, without disturbing the MCA. Therefore, the Court's inquiry starts with an examination of the surety bond of the MBA. If the MBA's surety bond provision allowed GIAA to complete the full drawdown of $2,104,582.88 from the Citibank LOC, the Tribunal would not have jurisdiction over the disputed transaction because the drawdown would be a dispute under the MBA. Unlike the MCA, the MBA has no arbitration clause and reserves all disputes for Guam's courts. If the Court finds that the Tribunal exceeded its authority and acted without jurisdiction, this would be cause to vacate the Final Award. See Pacificare, 2004 Guam 17 ¶ 23 ("a lower court may vacate an arbitration award when the arbitrators exceed their authority. An arbitrator exceeds his authority when he 'arbitrate[s] a dispute that is not arbitrable in the first place.'" (internal citations omitted)). However, if the Court finds that GIAA's drawdown disturbed portions of the LOC reserved for the MCA, GIAA would have breached the MCA, subjecting GIAA to the jurisdiction of the Tribunal.

The Court looks at the MBA's surety bond clause. Sections 13.3 and 13.3.1 of the MBA list out the parties' rights and responsibilities with regards to the surety bond. Trickett Decl. Ex. 3 (Joint Docs. Ex. C (Mama Bear Agreement) at 38-40). To interpret the relevant sections of the MBA, the principles of contract interpretation apply. "In interpreting a written contract, the intent of the parties is ascertained from the writing alone." Guam YTK Corp., 2014 Guam 7 ¶ 23 (quoting Ronquillo v. Korea Auto., Fire, & Marine Ins. Co., Ltd., 2001 Guam 25 ¶ 10 (internal quotation marks omitted)); see also 18 GCA § 87105 (2005) ("When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible...."); 18 GCA § 87104 (2005) ("The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity."). However, Guam law instructs the Court to disregard the language of the contract "when through

fraud, mistake, or accident, a written contract fails to express the real intention of the parties…". 18 GCA § 87106.

The Court examines Sections 13.3 and 13.3.1 of the MBA. Section 13.3, titled "Faithful Performance Bond", requires DFS to provide a surety bond in the amount of $250,000 within thirty days of the execution of the MBA. Trickett Decl. Ex. 3 (Joint Docs. Ex. C (MBA) at 38-39). GIAA required the surety bond to guarantee DFS's full performance under the terms of the MBA. Id. Section 13.3.1, titled "Use of Faithful Performance Bond", states in relevant part:

> If Concessionaire fails to pay Rent or otherwise defaults with respect to any provision of this Lease, the Authority may use, apply or retain all or any portion of the Faithful Performance Bond for the payment of Rent or other charge in default or for the payment of any other sum to which the Authority may become obligated by reason of Concessionaire's default or to compensate the Authority for any loss or damage which the Authority may suffer thereby. If the Authority so uses or applies all or any portion of the Faithful Performance Bond, Concessionaire, **within ten (10) days after demand therefor**, shall deposit other security acceptable to the Authority in an amount sufficient to restore the Faithful Performance Bond to the full amount thereof and Concessionaire's failure to do so shall be a breach of this Agreement.

Id. at 39-40 (emphasis added). This section of the MBA informs the Court of situations when GIAA could draw down on the Citibank LOC, and of the MBA "evergreen" provision. The Court examines specifically the "evergreen" provision. A plain language reading shows an assignment of responsibilities to both parties. The emphasized clause requires GIAA to make a demand, or request, to DFS to replenish the MBA bond. Once GIAA makes a demand for replenishment, DFS has ten days to restore the surety bond back to the original amount of $250,000. The Court finds that the language of Sections 13.3 and 13.3.1 are clear and explicit and do not involve absurdities. Because the parties make no allegations of fraud, mistake, or accident regarding the entire MBA, the Court further finds that the Parties' intentions can be clearly drawn from the language of Sections 13.3 and 13.3.1.

DFS argues that GIAA breached the MCA by drawing down the Citibank LOC in excess of the MBA's contractually allowed $250,000. The Court agrees. As the Court analyzed above, Section 13.3.1 created responsibilities for both parties. If GIAA needed to draw down an amount greater than $250,000 to cure a breach of the MBA, as such in the instant matter, GIAA

needed to provide DFS with notice in the form of a demand. Once GIAA made a demand for replenishment, DFS had ten days to restore the surety bond back to $250,000, from which GIAA could additionally draw a maximum of $250,000 from. If this second $250,000 was insufficient, GIAA could make further demands until DFS cured its breach of the MBA. Therefore, the Court disagrees with GIAA's argument that Citibank LOC was a pool of money that GIAA was justified in making its drawdown.

The MBA integration clause supports the Court's view of GIAA's argument. The integration clause, MBA Section 14.38 states:

> Integrated Agreement. This document and exhibits as incorporated herein by reference contains all the agreement of the parties and cannot be amended or modified except by a written agreement.

Id. at 52. GIAA presents no evidence that the parties intended to amend Sections 13.3 or 13.3.1 and pool the $250,000 surety bond with the previously deposited MCA performance bond. Therefore, the Court concludes that the MBA was not amended to combine the bond moneys from the MCA and MBA into a single pool. To collect damages in excess of $250,000, the MBA required GIAA to invoke the demand mechanism built into Section 13.3.1, rather than draw down the Citibank LOC for amounts greater than $250,000. Accordingly, the Court continues its examination of GIAA's drawdown of the Citibank LOC using the Court's plain language interpretation of the MBA's relevant sections.

In the instant matter, GIAA drew a lump sum of $2,104,582.88. During the September 27 hearing, GIAA, in response to the Court's question, stated that the Authority never made asked DFS to replenish the $250,000 surety bond. Because no demand was made, only $250,000 of the drawn $2,104,582.88 was available for drawdown under the MBA. Simple math tells the Court that GIAA drew far more than the contractually available $250,000. During oral argument, GIAA stated the possibility that the overdrawn $1,854,582.88 could have disturbed the BBA's performance bond. However, even if the Court or the Tribunal subtracted an additional $250,000 from the $1,854,582.88[2] overdrawn amount, GIAA would have taken

---

[2] The maximum amount GIAA could have drawn from the BBA bond is $250,000.

$1,604,582.88 from the MCA bond. Regardless of whether IAA's drawdown disturbed the BBA, the drawdown would have breached the MCA by improperly disturbing funds from the MCA bond. Therefore, the Court finds that GIAA breached the MCA by drawing in excess of the MBA's $250,000 contractual limit from the Citibank LOC.

**VI. The Arbitration Tribunal Had Authority to Award Pre and Post-Award Interest**

The Court now turns to its *de novo* review of GIAA's second argument that the Tribunal exceeded its power by awarding pre and post-judgment interest to DFS. GIAA argues that interest cannot be assessed on a government agency absent a waiver of sovereign immunity. The Government of Guam and its agencies enjoy broad protections under sovereign immunity. Sumitomo Construction Co., Ltd. v. Gov't of Guam ("Sumitomo II"), 2001 Guam 23 ¶ 8. Sovereign immunity can only be waived with legislation. Id. at ¶ 9. The Court starts by making the factual finding that judgment has yet to be issued in this matter, making GIAA's argument that the Tribunal incorrectly awarded post-judgment interest inapplicable. Because no judgment has been issued, the only interest issued by the Tribunal can be interest awarded pre-judgment. Therefore, the Court will only examine whether sovereign immunity barred the Tribunal from awarding pre-judgment interest.

Mindful of the sovereign immunity enjoyed by GIAA, the Court next examines whether the Tribunal's final award violated GIAA's sovereign immunity it when ordered pre and post-award interest. The general rule on Guam is that pre-judgment interest may accrue from the day a final arbitration award is issued. Asia Pacific II, 2015 Guam 3 ¶ 61. First, the Court examines whether the doctrine of sovereign immunity protects a government entity from arbitration. The general issue of sovereign immunity and arbitration came before the Pacificare court. The Pacificare court found that sovereign immunity "is not in any way implicated or threatened by the Government's compliance with its contract obligations. When the Government chooses to seek damages in a civil action, it-like all parties-should abide by the law, including an arbitration process to which it is contractually bound." Pacificare, 2004 Guam 17 ¶ 13 n.2; see also Guam YTK Corp., 2014 Guam 7 ¶ 41. The Guam Supreme Court determined that arbitration disputes are contract actions. See id. at ¶ 22 ("It is well-settled that an arbitration

agreement is a matter of contract and [t]he parties to an agreement are bound to arbitrate only those issues they have agreed to arbitrate, as shown by the clear language of the agreement and their intentions expressed in that language." (internal quotations omitted)). An arbitration matter brought before the courts of Guam is one party seeking to enforce the arbitration provision of a contract. See id.; see also United States v. Park Place Assocs., Ltd., 563 F.3d 907, 919 (9th Cir. 2009) ("An action under the FAA is an action in contract to enforce the arbitration provision." (citing Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ., 489 U.S. 468, 474 (1989))). Therefore, the Court finds that the doctrine of sovereign immunity in this matter does not bar a private party from compelling a GovGuam entity to arbitration and that GIAA must comply with its agreement to arbitrate matters that are within the scope of the MCA arbitration clause.

Secondly, the Court examines the more specific question of whether sovereign immunity limits an arbitrator from awarding interest as part of an award consistent with the rules of the arbitral body and Guam law. This is an issue not yet settled by the Guam Supreme Court. Therefore the Court looks outside to a case from the United States District Court of Hawaii. In Kenneth H. Hughes, Inc. v. Aloha Tower Development, Corp., 654 F.Supp.2d 1142 (D. Haw. 2009), the district court examined an issue very similar to the instant matter. Hughes involved an arbitration award for damages relating to a contract dispute between the State of Hawaii ("State") and a Texas corporation, Hughes, over the development of the Aloha Tower complex in Honolulu. Id. at 1144-45. After the project failed, Hughes filed a demand for arbitration pursuant to their Development Agreement. The Agreement required that disputes be brought before a mediator or arbitrator within the jurisdiction of the FAA. Id. at 1145. The arbitrator awarded Hughes over $900,000 in reliance damages, over $270,000 in pre-award interest, and more than $60,000 in attorneys' fees and costs. Id. The State filed a motion to vacate or modify the arbitration award with the district court, arguing that the award of interest violated the State's sovereign immunity.

In response to the State's argument that sovereign immunity prevents courts from awarding pre-judgment interest against the State, the Hughes court found there was no Hawaii law preventing arbitrators from ordering pre-award interest:

> Respondent relies on case law and Hawaii statute regarding pre- and postjudgments made in a court of law as evidence of the arbitrator's error. But the arbitrator's decision is not a judgment of a court of law. Hawaii Revised Statutes ("HRS") section 661-8, relied on by Respondent, states that: "No interest shall be allowed on any *claim* up to the time of the rendition of *judgment thereon by the court,* unless upon a contract expressly stipulating for the payment of interest." The arbitration demand was not a claim and the award was not a judgment by the court, and therefore HRS § 661-8 is not controlling.

Id. The district court also examined persuasive case law from different jurisdictions found that arbitrators held the ability to craft remedies within the scope of an arbitration agreement, which included the award of interest as a part of damages. Id. at 1148 (citing Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co., 991 F.2d 141, 148 (4th Cir.1993) ("An arbitration award under the [FAA] may include preaward interest...."); Advest, Inc. v. McCarthy, 914 F.2d 6, 10-11 (1st Cir.1990) ("arbitrators possess latitude in crafting remedies as wide as that which they possess in deciding cases. That leeway is at its zenith, where, as here, the arbitration clause imposes no limitations on choice of remedies."); Gordon Sel–Way, Inc. v. Spence Bros., Inc., 438 Mich. 488 (1991) (arbitrators have authority to award a measure of interest as an element of damages); Westminster Const. Corp. v. PPG Indus., Inc., 119 R.I. 205, 210 (1977) ("[A]rbitrators may award interest, even if not claimed, unless otherwise specifically provided by the parties in the agreement.")).

The district court also found that the State availed itself to arbitration by agreeing that "any claims or disputes, not resolved in good faith, may be brought before a mediator or arbitrator within the jurisdiction of the FAA." Id. Therefore, the district court was able to find that "the arbitrator did not manifestly disregard the law when determining that the State waived sovereign immunity as to interest in conjunction with its waiver as to damages." Id. The district court explained its reasoning for this determination:

> Because the FAA explicitly lists the grounds upon which a court may vacate, courts will not find a manifest disregard of the law where an arbitrator merely

interprets or applies the governing law incorrectly, and confirmation is required even if an arbitrator makes an erroneous finding of fact.... Rather, "it must be clear from the record that the arbitrators recognized the applicable law and then ignored it."

Id. at 1146 (quoting Mich. Mut. Ins. Co. v. Unigard Sec. Ins. Co., 44 F.3d 826, 832 (9th Cir. 1995)). The Hughes court followed Ninth Circuit precedent in finding that an arbitrator exceeds its powers and violates the FAA's limited circumstances for modification or vacation of an arbitration award when "an arbitrator's decision is 'completely irrational' or exhibits a 'manifest disregard of law.'" Id. (quoting Kyocera Corp. v. Prudential–Bache Trade Servs., 341 F.3d 987, 997 (9th Cir.2003)). District courts in the Ninth Circuit may not find a manifest disregard of law unless an arbitrator misinterprets or incorrectly applies governing law. Id. Because district courts must confirm an arbitration award even though an arbitrator makes an erroneous finding of fact, the Hughes court concluded by confirming the award and finding that the arbitrators did not manifestly disregard the law when determining that the State waived damages and its sovereign immunity with respect to interest. Id. at 1149.

The Hawaii Supreme Court, after acknowledging the non-controlling but persuasive nature of Hughes, applied the Hughes decision in Matter of Hawaii State Teachers Ass'n, 140 Hawaii 381 (2017), on the basis of three reasons. First, the language and statutory framework of the FAA tracked nearly identical to Hawaii's Uniform Arbitration Act. Id. at 399. Second, the Hawaii Supreme Court found the Hughes courts "analysis of the applicability of HRS § 661-8 to arbitration proceedings is reasonable and supported by the statutory framework of HRS Chapter 658A." Id. Although Hawaiian state courts used a different standard to determine whether an arbitrator exceeded its authority, the Hawaii State Teachers Ass'n court noted the similarities on how the FAA and Hawaiian state law "strongly curtail[ed] the court's ability to vacate an arbitrator's award on such grounds". Id. Lastly, the Hawaii Supreme Court noted that the State of Hawaii, as in Hughes, availed itself to the arbitration proceedings. Id.

The Court looks at both sources of persuasive authority to determine whether the Tribunal exceeded its authority in awarding pre-judgment interest. The Court finds the Hawaii State Teacher's Ass'n court's three-reason adoption of the Hughes decision to be highly persuasive and examines the instant matter under a similar framework. First, the language of the

relevant section of the GIAC and the FAA are textually identical. Compare 7 GCA § 42A701(b) with 9 U.S.C.A. § 10(a); see also Asia Pacific I, 2011 Guam 18 ¶ 19. Although the Hughes court used a different "completely irrational or exhibits a manifest disregard for the law" standard to find that an arbitrator exceeds its authority, the Hughes court's reasoning for using such a standard is clear: to limit the court's ability to vacate an arbitrator's award. Matter of Hawaii State Teachers Ass'n, 140 Hawaii at 399. While the "completely irrational or manifest disregard for the law" standard is used in the federal courts as the standard for examining whether an arbitrator exceeded his authority, on Guam, this standard tests for violations under 7 GCA § 42A701(b)(3), an arbitrator's misbehavior that prejudices the rights of a party. Asia Pacific II, 2015 Guam 3 ¶ 22. Although different, the core principle underlying the judicial review of arbitration awards remains the same. Whether on Guam, Hawaii, or in the federal system, courts have favored the use of arbitration and have limited the scope of review of arbitral tribunal decisions. See e.g. In re Grievance Arbitration Between State Organization of Police Officers, 135 Hawaii 456, 463 (2015) ("In determining whether an arbitrator has exceeded his or her authority under the agreement, 'there should be no second guessing by the court' of the arbitrator's interpretation of his or her authority so long as the arbitrator's interpretation 'could have rested on an interpretation and application of the agreement.'"); Pacificare, 2004 Guam 17 ¶ 16 ((quoting Sumitomo I, 1997 Guam 8 ¶ 10) ("In arbitration cases decided under the [FAA] ... the scope of review is quite narrow. ... In other words, "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, a court's conviction that the arbitrator made a serious mistake or committed grievous error will not furnish a satisfactory basis for undoing the decision." Advest, Inc. v. McCarthy, 914 F.2d 6, 9 (1st Cir.1990) (citations omitted)."). Because the GIAC and FAA are textually identical, the Court finds the Hughes court's examination of FAA to be extremely persuasive.

Second, both the Hawaii State Teacher's Ass'n court and the Hughes court found that the government party availed themselves to the arbitration. Hughes, 654 F.Supp.2d at 1149; Matter of Hawaii State Teachers Ass'n, 140 Hawaii at 399. In the instant matter, GIAA availed

itself to the arbitration when GIAA agreed to the arbitration clause within the MCA. When compelled to arbitrate, GIAA participated in the arbitration process. GIAA filed its Motion to Dismiss Arbitration for Lack of Jurisdiction on November 12, 2015. See Trickett Decl. Ex. 6. The Tribunal denied GIAA's Motion to Dismiss on December 10, 2015. See Trickett Decl. Ex. 7. Under 7 GCA § 42A401, GIAA had thirty days to appeal the Tribunal's decision with the Superior Court of Guam. See 7 GCA § 42A401 ("If the arbitral tribunal rules as a preliminary question that it has jurisdiction, any party may request, within thirty days after having received notice of that ruling, the court specified in Section 42A106 to decide the matter, which decision shall be subject to no appeal"). However, GIAA presents the Court with no such record of any appeal brought before the Superior Court. Further, GIAA's active participation in the arbitration process further demonstrates to the Court that GIAA willingly availed itself to the jurisdiction of the arbitrators.

Third, both the Hawaii State Teacher's Ass'n court and the Hughes court both examined HRS § 661-8, a statute barring the awarding of interest against the State through a "judgment thereon by the court." HRS § 661-8. Both courts conducted a plain language reading of the statute and found that the language of HRS § 661-8 only applied to the courts, and did not preclude an arbitrator from awarding interest to a party. Hawaii State Teacher's Ass'n court cited HRS § 658A-21(c), which provides that arbitrators are authorized to award remedies a court might be prohibited from granting, to support their reading of HRS § 661-8. Hawaii State Teacher's Ass'n, 140 Hawaii at 399.

In the instant matter, 5 GCA § 6301(a) states that "neither line agencies nor autonomous agencies nor the government of Guam shall be liable for interest prior to the date of judgment, nor for any punitive damages, nor for attorney's fees of the claimant". 5 GCA § 6301(a). While this statute from the Government Claims Act may seem to bar any award of interest against GIAA, the Court applies the Hawaii State Teacher's Ass'n and Hughes courts' reading of HRS § 661-8 to 5 GCA § 6301(a). The Court, first, recognizes that one of the tenets of statutory interpretation instructs the Court to not look at a statute in isolation, but as a part of a whole to determine the Legislature's intent for the statute. See Sumitomo II, 2001 Guam 23 ¶ 17. The

Government Claims Act provides a way of claimants to file claims against GovGuam, including a lawsuit filed with the Superior Court of Guam. No section of the Government Claims Act refers to arbitration nor the rights and responsibilities of arbiters or parties. Therefore, the Court finds that the language of 5 GCA § 6301(a) only bars the courts of Guam from awarding interest against GovGuam. The Government Claims Act does not preclude an arbiter from awarding interest to a party.

The Court's reading of the 5 GCA § 6301(a) is supported by the GIAC. While the GIAC does not have an analogue to HRS § 658A-21(c), the Court examines the language of 5 GCA § 42A405. This statute states:

> Unless otherwise agreed to by the parties; **every person who is entitled to recover damages certain, or capable of being made certain by calculation, under an arbitration award, and the right to recover which is vested in him, upon a particular day, is entitled also to recover interest thereon from that day,** except during such time as the debtor is prevented by law, or by the act of the creditor, from paying the debt. Such interest shall be added to the arbitral award.

5 GCA § 42A405 (emphasis added). The statute states that all parties are entitled to interest if allowable under the arbitration agreement unless the debtor is prevented by law or by the act of the creditor from paying the debt. The Court sees no law that would prevent GIAA from paying interest. Therefore, a plain language reading of 5 GCA § 42A405 shows that no party, even GovGuam entities such as GIAA, are exempt from interest being awarded as part of an arbitration award.

The Guam Supreme Court's holdings on the nature of arbitration further supports the Court's analysis. As stated above, arbitration disputes are contract actions. See Guam YTK Corp., 2014 Guam 7 ¶ 22. The scope of the arbitration and the arbitration panel's jurisdiction is determined by the arbitration clause. Pacificare, 2004 Guam 17 ¶ 24 ("It is a long-standing principle of consensual arbitration that the nature and scope of an arbitration panel's authority is determined by the language of the arbitration clause."). The Pacificare court instructed that, because the arbitration process is a contract action, the rules of contract law apply and any party availing itself to the arbitration process submits to the nature and scope of an arbitration panel's

authority. If the applicable rules to the arbitration include the award of interest, all parties, including government parties, must abide by the agreed upon rules. The Hughes court and Hawaii State Teacher's Ass'n both found that, at the end of their analyses, that the government party waived their sovereign immunity and that the arbitrators did not err by awarding pre-judgment interest. Therefore, the Court follows the courts' leads and finds that when a government entity avails themselves to an arbitration that authorizes the awarding of interest, that government entity waives its sovereign immunity with respect to an arbitration award that grants the prevailing party interest.

## VII. The Arbitration Tribunal Issued a Valid Final Award

Having examined *de novo* GIAA's two arguments, the Court turns to GIAA's argument that the Tribunal exceeded its authority pursuant to 7 GCA § 42A701(b)(4) by making conclusions regarding the MBA and making the final award in DFS's favor. In its analysis, the Tribunal took care to "not consider the validity of any claim under the [MBA] or the [BBA], but [referred] to these two agreements only tangentially as they may relate to the interpretation of the rights and obligations of the Parties under the Main Agreement." Trickett Decl. Ex 1 (Final Award) ¶ 69. Instead the Tribunal focused only on the MCA and "[disclaimed] any jurisdiction over disputes arising from the [MBA] or the [BBA], and nothing in this Award shall be construed as a determination of any rights or obligations under either of those two agreements." Id. The Court sees that the Tribunal went to great lengths to clearly define the scope of their analysis.

The Court now reviews the Tribunal's analysis. The Tribunal examined whether the parties amended the Citibank LOC to hold a pooled aggregate amount available for drawdown by GIAA in the event of a breach of any of the MCA, MBA, or BBA. Id. at ¶ 68. The Tribunal first looked at MCA Section 12.3 holding the faithful performance bond requirement, and concluded that the purpose of the bond was to guarantee DFS's performance of the MCA's terms. Id. at ¶ 70. The Tribunal next turned to Section 12.3.1 (Use of Faithful Performance Bond) and noted that the faithful performance bond was to be used for breaches of the MCA only. Id. at ¶ 71. The Tribunal also cited to the MCA Integration Clause, from which the

Tribunal concluded that although the parties agreed that one LOC would contain all three security bonds, the MCA was never modified by written agreement to create an aggregate pool of money from which GIAA could use to cure breaches of the MCA, MBA, or BBA.

After linking the language from GIAA's November 21, 2013 letter to Citibank to the start date of the MCA, the Tribunal reached the conclusion that GIAA referred to the MCA's performance bond when GIAA contacted Citibank for the draw down. Therefore, the Tribunal found that GIAA breached the MCA by drawing down on the Faithful Performance Bond only available for draw down on breaches or defaults under the MCA. To remedy GIAA's breach, the Tribunal awarded DFS $1,854,528.88 in damages with 6% pre and post-award interest. Id. at ¶ 88. The Tribunal also awarded DFS $388,223.20 in attorney's fees and $84,770 in costs. The Court carefully reviewed the Tribunal's final award and sees no attempt by the Tribunal to adjudicate the merits of claims brought under the MBA. Therefore, the Court finds no cause to accept GIAA's argument and find that the Tribunal adjudicated the merits of the MBA. Accordingly, the Court finds that the Tribunal's exercise of jurisdiction over the MCA did not exceeded its authority.

The Court also examines the award of pre-judgment interest by the Tribunal. As stated above, GIAA agreed to the arbitration clause in the MCA, and availed itself to the arbitration process. The arbitration clause states that "any controversy or claim arising from or relating to this contract, or breach thereof involving $1 million shall be settled by arbitration administered by the American Arbitration Association under its (applicable) Arbitration Rules and Supplementary Procedures for Large, Complex Disputes ("AAA Rules")...". Trickett Decl. Ex. 3 (Joint Docs) Ex. A at 43). This language appears to incorporate the use of all available legal and equitable remedies. The AAA Rules themselves allow an arbitrator to "grant any remedy or relief that the arbitrator deems just and equitable and within the scope of the agreement of the parties". AAA Rule R-47(a). Among the available remedies under the AAA rules include interest. AAA Rule R-47(d)(i) ("The award of the arbitrator(s) may include: i. interest at such rate and from such date as the arbitrator(s) may deem appropriate."). The current dispute involves a controversy worth over $1 million. Therefore, the AAA Rules apply and AAA Rules

allow arbitrators to award interest. Therefore, pursuant to the arbitration clause and the AAA Rules, the Court finds that the award of pre and post-award interest was within the scope of the Tribunal's authority. Accordingly, the Court finds that GIAA waived its sovereign immunity and that the Tribunal did not exceed its authority by awarding pre-judgment interest to DFS.

The Court, having rejected GIAA's two arguments, **DENIES** GIAA's Motion to Vacate Arbitration Award. Accordingly, pursuant to 7 GCA § 42A702, the Court **GRANTS** DFS's Application for Order to Confirm Arbitration Award, and **CONFIRMS** the Tribunal's Final Award.

## CONCLUSION

For the reasons set forth above, the Court finds no cause to accept GIAA's argument and find that the Tribunal adjudicated the merits of the MBA. Accordingly, the Court finds that the Tribunal's exercise of jurisdiction over the MCA did not exceeded its authority. Further, the Court finds that GIAA waived its sovereign immunity and that the Tribunal did not exceed its authority by awarding pre-judgment interest to DFS. Having rejected GIAA's two arguments, the Court **DENIES** GIAA's Motion to Vacate Arbitration Award. Accordingly, pursuant to 7 GCA § 42A702, the Court **GRANTS** DFS's Application for Order to Confirm Arbitration Award, and **CONFIRMS** the Tribunal's Final Award.

**IT IS SO ORDERED** ____DEC 2 6 2018____ .

_____
**HONORABLE ARTHUR R. BARCINAS**
**Judge, Superior Court of Guam**

SERVICE VIA COURT BOX
I acknowledge that a copy of the original hereto was placed in the court box of:
Civille, BSJM
CKJ
Date: 12-26-18 Time: 5:02pm

Deputy Clerk, Superior Court of Guam

Page 21 of 21